**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS**

**IN RE O'HARE, ET AL.,**

    **Movants**

## MOTION TO QUASH SUBPOENAS

Three subpoenas were recently issued from this Court for the production of documents and attendance at depositions to be taken in Houston. The subpoenas relate to an action pending in the United States District Court for the Southern District of New York, *Flannigan v. Vulcan Power Group, et al.*, no. 09-Civ.-8473 (S.D.N.Y.) ("the Flannigan lawsuit"). The subpoenas were issued to three individuals—Daniel O'Hare ("O'Hare"), Jean Frizzell ("Frizzell"), and John Black ("Black")—who are not parties to the Flannigan lawsuit. O'Hare, Frizzell, and Black now move to quash the subpoenas attached as Exhibits A, B, and C.

The attorney who signed the subpoenas as an officer of the Court—David R. Forrey ("Forrey")—picked a date for the depositions and document production without conferring with the potential witnesses, who would have to cancel or re-schedule prior commitments in order to comply with the subpoenas. Moreover, Forrey gave the witnesses less than two weeks to prepare for their depositions (which concern a lawsuit filed in 2004) and to comply with overly broad document requests (many of which expressly seek privileged communications).

Under Rule 45, the issuing court "must quash or modify a subpoena that . . . (i) fails to allow a reasonable time to comply; . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A). The subpoenas issued here violate each of those subsections. Furthermore, the

subpoenas addressed to Frizzell and Black were not personally delivered to them and should be quashed for that reason, too. *See* Fed. R. Civ. P. 45(b)(1).

## I. FACTUAL BACKGROUND

Frizzell and Black are attorneys who represented O'Hare in an action filed in Texas in 2004. As the Fifth Circuit recently summarized,

> Daniel O'Hare, Michael Stewart, Ford Graham, and Kevin Davis at one time served together on Vulcan Power Group, L.L.C.'s Board of Managers. A management dispute prompted O'Hare and Stewart to file a lawsuit in 2004 against Graham, Davis, and various corporate entities with which Graham and Davis were affiliated. That lawsuit resulted in a settlement agreement entered in October 2004 in which O'Hare and Stewart agreed to accept $1 million each, payable over four years, in exchange for releasing their ownership interests in certain companies.

*O'Hare, et al. v. Graham, et al.*, no. 10-50971, 2011 WL 5599435 at *1 (5th Cir. Nov. 17, 2011). When the settlement obligors did not pay, O'Hare and Stewart amended their complaint to add breach-of-contract claims. And when it became apparent that Graham and Davis had never intended to honor the settlement agreement (and were transferring assets from the settlement obligors to newly created entities), O'Hare and Stewart brought fraudulent inducement claims against Graham and Davis. The fraud claims were tried in early 2010, and the jury returned a verdict of nearly $8 million for O'Hare and Stewart.

The Fifth Circuit held that the "[e]vidence adduced at trial fully supported an intent not to pay." *Id.* at *3. For example, "[a] former co-worker of Graham and Davis testified that, shortly before entering the settlement agreement, Graham announced that he would create new corporate entities through which to channel money to prevent O'Hare and Stewart from receiving payment." *Id.*

The former co-worker who testified at trial is Susan Flannigan, the plaintiff in the underlying action now pending in New York, *Flannigan v. Vulcan Power Group, et al.*, no. 09-Civ.-8473 (S.D.N.Y.). The defendants in the Flannigan lawsuit include Davis and Graham, who had the fraud judgment against them affirmed by the Fifth Circuit on November 17, 2011.

On November 30, Graham issued deposition subpoenas to Frizzell and Black, who were the attorneys for O'Hare and Stewart. As explained below, the subpoenas were not served on Frizzell and Black; the subpoenas were simply left at the front desk of Frizzell and Black's firm. On December 4, Graham's process server personally served a virtually identical subpoena on O'Hare.

Each subpoena includes four requests for the production of documents. The first request seeks "[a]ny and all documents, emails, notes and records" provided to O'Hare, Frizzell, Black (or any of their agents or representatives) by Flannigan (or her attorneys or anyone acting on her behalf) that "relate to or concern" Graham or any of the other defendants in the Flannigan lawsuit. The request is not limited by time or subject-matter. The other requests are even broader. Essentially, Graham seeks all documents that "relate to or concern" him or any of the other defendants and that (a) O'Hare, Stewart, Frizzell, or Black provided to anyone or (b) were provided to O'Hare, Stewart, Frizzell, or Black by anyone. It is unclear what any of these requests has to do with the subject-matter of the Flannigan lawsuit. And with regard to the depositions themselves, they would be just as much a fishing expedition as the requests for production of documents.

The depositions and document production are currently scheduled for 10:00 A.M. on Tuesday, December 13, 2011. Graham's lawyer (Forrey) wants to give O'Hare, Frizzell, and Black less than two weeks to prepare for and attend the depositions, and to locate, review, and

produce documents. Even assuming that the depositions and document requests might somehow be relevant to the issues in the Flannigan lawsuit, the timeline is unrealistic because of the unlimited scope of the requests, the length and complexity of the underlying lawsuit, and the fact that most of the responsive documents would be privileged.

## II. ARGUMENT

There are four independent reasons why the subpoenas must be quashed. The subpoenas (1) impose an undue burden, (2) request privileged materials, (3) fail to allow a reasonable time to comply, and (4) were not personally served on Frizzell or Black.

**A.     The subpoenas are unduly burdensome because the requests are virtually unlimited in scope, have no connection to the Flannigan lawsuit, and cause inconvenience to non-parties.**

To determine whether a subpoena poses an undue burden under Rule 45, courts consider "(1) [the] relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). And when the recipients of the subpoenas are non-parties, as they are in this case, a court "may also consider the expense and inconvenience to the non-party. A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Id.*

*Relevance and need.* The relevance of the subpoenaed information, as well as Graham's need for this discovery, is unclear. *Only one of the four requests even mentions Flannigan*, the plaintiff in the action for which these subpoenas were issued. The other requests cover any document that concerns Graham (or any of the other defendants in the Flannigan lawsuit) and that Frizzell or Black either gave to or received from anyone. The requests are so facially

4

overbroad that it is impossible to guess how the requested information might be relevant to the Flannigan lawsuit.

*Scope and particularity.* The next set of factors—the breadth of the requests, the time period covered, and the particularity of description—also strongly support the Motion to Quash. The requests cover a dispute that is nearly eight years old. (As noted above, the initial lawsuit between O'Hare, Stewart, Graham, and Davis was filed in 2004, and there were thirteen corporate defendants in addition to Graham and Davis.) Graham makes no effort to limit the time-period covered. Nor does he describe the information he seeks. The breadth and imprecision of the subpoenas are illustrated by the third request for documents: "Any and all documents provided to you [presumably since 2004] by any adverse party [which is undefined], whether in litigation or not, or anyone acting on their behalf, which concern defendants [also undefined], Ford Graham, Kevin Davis or Vulcan Power Group." The term "fishing expedition" may be a cliché, but it accurately describes these requests.

*Expense and inconvenience.* Because O'Hare, Frizzell, and Black are non-parties in the Flannigan lawsuit, the Court may consider the expense and inconvenience as part of the burden imposed by the subpoena. Graham's attorney did not contact them to arrange a convenient time for the depositions. Instead, he chose a time and issued the subpoenas without conferring with them. Complying with the subpoenas would require O'Hare, Frizzell, and Black to cancel or reschedule meetings (which would unnecessarily inconvenience their clients and colleagues) and to review all of their files in the *O'Hare v. Graham* action, gather responsive documents, and review them for privilege-related issues. Complying with the subpoenas would require significant time and expense.

In sum, it is not clear what information Graham wants or why it would be relevant to the Flannigan lawsuit. Graham has made no effort to limit the requested information by time-period or subject-matter. Complying with these facially overbroad subpoenas would entail significant and unwarranted expense and inconvenience for O'Hare, Frizzell, and Black. Because of this burden, the Court is required by Rule 45(c)(3)(A) to quash the subpoenas.

**B.      Because of the broad scope of the subpoenas, a period of nine to thirteen days is not a reasonable time to comply.**

The breadth of the subpoenas not only creates an undue burden but also makes it unreasonable to demand compliance in a short period of time. Fed. R. Civ. P. 45(c)(3)(A)(i) (a subpoena must be quashed if it "fails to allow a reasonable time to comply").

Graham served the subpoena on O'Hare on Sunday, December 4—just nine days before the scheduled deposition and document production on December 13. Graham's process server left the subpoenas for Frizzell and Black at the receptionist's desk on November 30. Even if those subpoenas had been properly served, Frizzell and Black would have only thirteen days to comply. Most decisions applying the "reasonable time" requirement have involved periods shorter than thirteen days. *E.g., In re Sulfuric Acid Antitrust Litigation,* 231 F.R.D. 320, 327 (N.D. Ill. 2005) (ten days is not a reasonable time to comply in a complex case); *Donahoo v. Ohio Dept. of Youth Servs.,* 211 F.R.D. 303, 306 (N.D. Ohio 2002) (seven days is not reasonable); *United States v. Woods,* 931 F. Supp. 433, 442 n. 3 (E.D. Va. 1996) (seven days is not reasonable); *In re Stratosphere Corp. Sec. Litig.,* 183 F.R.D. 684, 687 (D. Nev. 1999) (six days is not reasonable). But in cases where a subpoena seeks documents in addition to a deposition, or in cases where privileges are likely to be asserted, courts have stated that the "reasonable time to comply" is necessarily longer than usual. *See Paul v. Stewart Enterp., Inc.,*

2000 WL 1171120 at *1 (E.D. La. Aug. 16, 2000) (requiring at least fourteen days to comply so that parties had time to object to requests for the production of documents); *Mann v. Univ. of Cincinnati,* 824 F. Supp. 1190, 1202 (S.D. Ohio), *aff'd,* 152 F.R.D. 119 (S.D. Ohio 1993).

Here, Graham is not only seeking the production of documents, but he has done so with overbroad requests that cover nearly eight years and seek privileged materials, as explained below. Under these circumstances, Graham has not allowed any of the movants a reasonable time to comply with the subpoenas or to raise specific objections or assert privileges. The lack of time is especially clear with respect to O'Hare, who was served just nine days before the deadline for complying with the subpoena.

**C.     The facially overbroad subpoenas also seek privileged material.**

Even if Graham's broadly written requests were limited to communications involving Flannigan, the common-interest rule would still allow the sharing of information without waiving any privilege. "Under the common interest rule, individuals may share information without waiving the attorney-client privilege if (1) the disclosure is made due to actual or anticipated litigation; (2) for the purpose of furthering a common interest; and (3) the disclosure is made in a manner not inconsistent with maintaining confidentiality against adverse parties." *Holland v. Island Creek Corp.*, 885 F. Supp. 4, 6 (D.D.C. 1995); *see also Schachar v. American Academy of Ophthalmology, Inc.*, 106 F.R.D. 187, 191 (N.D. Ill. 1985); *In re LTV Sec. Litig.*, 89 F.R.D. 595, 604 (N.D. Tex. 1981) (the common-interest rule applies to separate litigants facing a common adversary); Rice, *Attorney-Client Privilege in the United States* § 4:35 (updated July 2011 on Westlaw). Flannigan, O'Hare, and Stewart (the other plaintiff in the Texas litigation) are all former colleagues of Graham and Davis; they all have brought claims against Graham and Davis; and they are creditors of Graham and Davis in pending bankruptcy proceedings. Because

7

Flannigan, O'Hare, and Stewart have common litigation interests, communications among their lawyers are within the attorney-client privilege.

Frizzell and Black have not gathered responsive documents and reviewed each document for privilege issues. But the first document request, on its face, seeks any and all documents that were transmitted between or among Frizzell and Black, their clients, Flannigan, and Flannigan's counsel with regard to their similar claims against Graham and Davis. Again, even if Graham had limited the subpoena to communications involving Flannigan, that information is privileged.

**D.    The subpoenas addressed to Frizzell and Black were not personally served and could be quashed for that reason alone.**

"The longstanding interpretation of Rule 45 has been that personal service of subpoenas is required. The use of the word 'delivering' in subdivision (b)(1) of the rule with reference to the person to be served has been construed literally. Under this construction, contrary to the practice with regard to the service of a summons and complaint, it is not sufficient to leave a copy of the subpoena at the dwelling place of the witness." Wright, Miller, et al., 9A *Fed. Prac. & Proc. Civ.* § 2454 (3d ed. 2010); *see also Klockner Namasco Holdings Corp. v. Daily Access.Com, Inc.*, 211 F.R.D. 685, 687 (N.D. Ga. 2002) (pointing out that Rule 45 does not incorporate the provisions of Rule 5, which governs service of pleadings and other papers). "[U]nder the plain language of [Rule 45], as well as Fifth Circuit precedent, service is improper if the person himself is not served with a copy of the subpoena." *Weiss v. Allstate Ins. Co.*, 512 F. Supp. 2d 463, 466 (E.D. La. 2007) (citing *Harrison v. Prather*, 404 F.2d 267, 273 (5th Cir. 1968)); *see also Doe v. Catholic Soc. of Religious & Literary Educ.*, 2009 WL 4506560 (S.D. Tex. 2009) (noting that personal service on deponents is required).

Accordingly, when a party attempts to subpoena an attorney, it is not sufficient to leave the subpoena at a receptionist's desk. *E.g., United States v Philip Morris Inc.,* 312 F. Supp. 2d 27, 37-38 (D.D.C. 2004) (a party tried to subpoena attorneys at the Department of Justice; "several of the deposition subpoenas were simply left at the mail room at DOJ or with support staff, but were not personally served . . . . The violation of Rule 45(b)(1) . . . is clear."). Here, the subpoenas were never personally served on Frizzell or Black. Graham hired a process server who simply left the unaccepted, unsigned-for subpoenas at the receptionist's desk at Frizzell and Black's firm. The improper service is yet another reason for quashing the subpoenas.

### III. CONCLUSION

WHEREFORE, PREMISES CONSIDERED, O'Hare, Frizzell, and Black respectfully request that this Motion to Quash be granted and that the subpoenaed depositions with document requests not be taken as noticed. O'Hare, Frizzell, Black seek all other legal and equitable relief to which they may show themselves justly entitled.

Respectfully submitted,

**REYNOLDS, FRIZZELL, BLACK,**
**DOYLE, ALLEN & OLDHAM, L.L.P.**

By:   /s/ *John Scott Black*_____
      Jean C. Frizzell
      TBA No. 07484650
      John S. Black
      TBA No. 24012292
      1100 Louisiana, Suite 3500
      Houston, Texas 77002
      Telephone: 713-485-7200
      Telecopier: 713-485-7250

**ATTORNEYS FOR DANIEL J. O'HARE**
**AND MIKE STEWART**

9

## CERTIFICATE OF SERVICE

I hereby certify that I, on this the 12th day of December  2011, have served the foregoing counsel via facsimile and certified mail:

David E. Forrey
Lewis & Forrey, LLC
34 Chambers Street
Princeton, NJ 08542

Marc Stadtmauer
230 Park Ave #2525
New York, NY 10169-3201

Jesse R. Castillo
Castillo Snyder, PC
Bank of America Plaza, Suite 1020
300 Convent Street
San Antonio, Texas 78205

/s/ *John Scott Black*
John S. Black